# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THE UNITED STATES OF AMERICA,
for the use and benefit of John Wayne
Construction, G.S.A. Division, LLC, a
Florida LLC, and JOHN WAYNE
CONSTRUCTION, G.S.A. DIVISION,
LLC, a Florida LLC,

            Plaintiffs,

v.                                   Case No. 3:20-cv-914-MMH-JRK

FEDERAL INSURANCE COMPANY,
an Indiana Corporation, and SAUER
INCORPORATED, a foreign Corporation,

            Defendants.

_____

## REPORT AND RECOMMENDATION[1]

    This cause is before the Court on Defendants' Motion to Compel

Arbitration and to Stay Claims Pending Arbitration (Doc. No. 8; "Motion"), filed

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

September 11, 2020.[2] Plaintiffs responded in opposition to the Motion on September 22, 2020. <u>See</u> Plaintiffs' Response to Defendants' Motion to Compel Arbitration and Stay Pending Claims (Doc. No. 10; "Response"). With leave of Court, Defendants filed Defendants' Reply to Plaintiffs' Response to Motion to Compel Arbitration and Stay Pending Claims (Doc. No. 13; "Reply") on October 6, 2020. <u>See</u> Order (Doc. No. 12), entered September 29, 2020.

The Motion is ripe for review. Having considered the procedural posture of the case, the Motion, and all relevant matters, the undersigned recommends that the Motion be granted for the reasons stated herein.

## I.   Background/Procedural History

Defendant Sauer Incorporated ("Sauer") was a prime contractor for the United States Government for a project at Joint Reserve Intelligence, JRB Naval Air Station in New Orleans, Louisiana. <u>See</u> Complaint (Doc. No. 1; "Compl."), filed August 14, 2020, at 2 ¶ 7. Sauer, as a requirement of the work to be performed for the project, executed a payment bond to the United States of America in the amount of $10,937,000.00. Compl. at 2 ¶ 8; <u>see also</u> <u>id.</u> at Ex. A (Doc. No. 1-2) (Payment Bond). Defendant Federal Insurance Company ("FIC") is the surety of the obligation on the payment bond. <u>Id.</u> at 2 ¶ 9; <u>see generally</u> Payment Bond.

---

[2]    The Motion is referred to the undersigned for a report and recommendation regarding an appropriate resolution.

For the project, Sauer executed a subcontract agreement with Plaintiff John Wayne Construction, G.S.A. Division, LLC ("JWC") "for certain drywall framing and hanging work" at JRB Naval Air Station, New Orleans, Louisiana. Compl. at 2 ¶ 10; see generally id. at Ex. B (Doc. No. 1-3) (Subcontract Agreement between JWC and Sauer; "Subcontract Agreement").[3] The parties allegedly made several changes to the Subcontract Agreement through a "change order process," and also through "verbal agreement and course of dealing" that were "memorialized through Requests for Change Orders [ ], signed work tickets and other documents drafted by the parties." Id. at 3 ¶¶ 13, 15; see also id. at Ex. C (Doc. No. 1-4) (Change Orders); id. at Ex. D (Doc. No. 1-5) (Requests for Change Orders). The modifications brought the total price value of the Subcontract Agreement to $646,139.03. Id. at 3 ¶ 16; see also id. at Ex. E (Doc. No. 1-6) (Proof of Claim).

## A. Dispute Resolution Section of the Subcontract Agreement

The Subcontract Agreement contains a detailed Dispute Resolution section that outlines the parties' rights. See Subcontract Agreement at 12-13. The section states that if the parties "have a dispute arising out of or relating to this [Subcontract] Agreement . . . then [JWC] agrees to give Sauer written notice within ten (10) days of when the dispute first arises, or else [JWC] waives

---

[3]    For ease of reference, citations to the Subcontract Agreement are in accordance with the Court's electronic filing system (CM/ECF).

3

all rights to claim additional compensation or a time extension for it." <u>Id.</u> at 13. If Sauer receives the required notice, the parties "will attempt to settle the dispute in the first instance with Sauer's Project Manager." <u>Id.</u> Should JWC be "dissatisfied with the response of Sauer's Project Manager, . . . [JWC] may, within the next ten (10) days, appeal to the next level of Sauer's management at Sauer's Jacksonville, Florida office for a decision." <u>Id.</u> If JWC is still dissatisfied after appealing to Sauer's "next level of management," it may take the following steps:

> [I]t may choose to pursue the matter in court, subject to the requirements on venue and alternative dispute resolution agreed to herein. Any claim by [JWC] filed in state or federal court against Sauer and/or Sauer's surety shall only be filed and/or resolved in any court within the exclusive venue of Duval County, Florida. <u>At Sauer's sole option</u>, Sauer may require Alternative Dispute Resolution (ADR) methods to be used to resolve the dispute, <u>including binding arbitration</u> in accordance with the Construction Industry Rules of the American Arbitration Association, <u>instead of litigation in a court of law</u>. In the event Sauer elects binding arbitration, any claims that [JWC] may have against any bonds provided by Sauer shall be stayed, pending the result of such binding arbitration.

<u>Id.</u> (emphasis added).

## B.   The Louisiana Lawsuit

At some point during the project, the relationship between JWC and Sauer began to deteriorate. On March 12, 2020, Sauer filed a lawsuit against JWC in state court in Louisiana ("the Louisiana Lawsuit") "for breach of contract and damages incurred by Sauer as a result of [JWC]'s failure to

complete work in a timely manner, causing delays to the project at issue." Motion at 3 (footnote omitted); <u>see also</u> <u>id.</u> at Ex. 1 (Doc. No. 8-1) (Petition for Breach of Contract and for Damages; "Petition"), at 3-7. [4] Following unsuccessful mediation, on August 14, 2020, JWC filed a Peremptory Exception of Non-Joinder, asking the Louisiana court to dismiss Sauer's lawsuit. <u>See</u> <u>id.</u> at Ex. 2 (Doc. No. 8-2) (Peremptory Exception of Non-Joinder and Memorandum in Support of Peremptory Exception of Non-Joinder; "Peremptory Exception").[5]

On September 30, 2020, Sauer filed its Response to Peremptory Exception of Non-Joinder, stating it did not oppose the dismissal (without prejudice) of the Louisiana Lawsuit. <u>See</u> Reply at Ex. 1 (Doc. No. 13-1; "Response to Peremptory Exception"). Sauer stated that it had "formally invoked its right . . . to arbitrate" and that it "now intends to arbitrate the claims asserted in th[e Louisiana Lawsuit.]" Response to Peremptory Exception at 1. On October 8, 2020, Judgment was entered in the Louisiana Lawsuit, sustaining the Peremptory Exception and dismissing the Petition without prejudice. <u>See</u> Defendants' Unopposed Motion for Judicial Notice with Supporting Memorandum of Law

---

[4]        For ease of reference, citations to the Petition are in accordance with the Court's electronic filing system (CM/ECF).

[5]        A hearing was originally set for October 8, 2020 in Louisiana regarding the Peremptory Exception. <u>See</u> Motion at 4; <u>see also</u> Response at 5.

(Doc. No. 14; "Judicial Notice"), filed October 26, 2020, at Ex. 1 (Doc. No. 14-1; "Judgment").[6]

## C.     The Florida Lawsuit

While the Louisiana Lawsuit was still ongoing, on August 14, 2020 (the same day JWC filed its Peremptory Exception in Louisiana), "the United States of America, for the use and benefit of [JWC]," filed this action pursuant to 40 U.S.C. §§ 3131-3133 (formerly 40 U.S.C. §§ 270a, 270b) "demand[ing] judgment against [FIC] and Sauer, jointly and severally" for the balance due on the Subcontract Agreement pursuant to the Miller Act. Compl. at 4; see id. at 2-4 (Count I).[7] JWC also brings a Miller Act claim for the reasonable value of work, labor and materials (Count II) and a claim for breach of contract against Sauer (Count III). See id. at 1, 4-5 (emphasis and capitalization omitted).

After JWC executed service on FIC and Sauer, see Returns of Service (Doc. Nos. 5, 6), filed August 24, 2020 and August 26, 2020, respectively, the instant Motion was filed approximately three weeks later, seeking to compel arbitration of JWC's claims pursuant to the Dispute Resolution section of the

---

[6]     For ease of reference, citations to the Judgment are in accordance with the Court's electronic filing system (CM/ECF).

[7]     The Miller Act requires contractors performing "construction, alteration, or repair of any public building or public work" for the Federal Government to obtain a performance bond and payment bond (for labor and material) in any contracts that exceed $100,000 before the contract will be awarded. See 40 U.S.C. § 3131(b).

Subcontract Agreement and the Federal Arbitration Act ("FAA"), <u>see</u> Motion at 2; <u>see also</u> Subcontract Agreement at 12-13.[8]

On October 26, 2020, Defendants filed a motion asking the Court "to take judicial notice of the docket and public filings of the [October 8, 2020] Judgment . . . entered in the [Louisiana Lawsuit]." Judicial Notice at 1. The Honorable Marcia Morales Howard, United States District Judge, took judicial notice of the Judgment entered in the Louisiana Lawsuit. <u>See</u> Order (Doc. No. 15), signed October 28, 2020, entered October 29, 2020. Judge Howard also entered an Order staying this case pending resolution of the Motion. <u>See</u> Order (Doc. No. 17), entered November 13, 2020.

## II.   Parties' Positions

Defendants seek an Order compelling arbitration and staying this case pursuant to the Dispute Resolution section of the Subcontract Agreement and the FAA. Motion at 2. Defendants argue that "arbitration is favored under the law" and that the parties "have expressly agreed to arbitrate the issue in dispute." <u>Id.</u> at 4, 7 (citation omitted). Additionally, Defendants contend that "there are no federal statutes, policies, or other external constraints that

---

[8]    For clarity, this Report and Recommendation will refer to the United States' Miller Act claim, brought "for the use and benefit of [JWC]," along with JWC's Miller Act claim and breach of contract claim against Sauer, collectively as "Plaintiffs' claims" or "JWC's claims" as the Motion, Response, and Reply focus on the conduct and relationship between JWC and Sauer.

prohibit arbitration of the claims asserted here[ ] . . . ." <u>Id.</u> at 8. Finally, Defendants state that "FAA Section 3 mandates that this action be stayed pending the arbitration." <u>Id.</u> at 9 (citations omitted).

Anticipating issues likely to be raised by Plaintiffs in their Response, Defendants claim that they did not waive their right to arbitrate by bringing the Louisiana Lawsuit, <u>see</u> <u>id.</u> at 9, 10-12, and that "Plaintiff[s] will be unable to satisfy their heavy burden to demonstrate prejudice in connection with a waiver," <u>id.</u> at 12.

Responding, as Defendants anticipated, JWC argues "that Sauer has waived its contractual right to compel arbitration by virtue of filing suit in Louisiana." Response at 1. Many of the specific arguments made by Plaintiffs center on the "ongoing" nature of the Louisiana Lawsuit. <u>See</u> <u>id.</u> at 4-5, 7-8. Given that dismissal of the Louisiana Lawsuit occurred after the filing of Plaintiffs' Response, what remains is the contention that Sauer waived its right to arbitrate on the ground that Sauer has acted inconsistently with the intent to arbitrate by initiating suit in Louisiana and that "JWC has been prejudiced by Sauer's delays and gamesmanship." <u>Id.</u> at 6 (emphasis omitted). Specifically, JWC argues that "Sauer had the ability to prevent both the Louisiana [Lawsuit] and this action from ever occurring, but failed to do so." <u>Id.</u> at 5; <u>see also</u> <u>id.</u> at 7 (stating that "Sauer had the right and power to compel arbitration out of the gate and it did not"). Instead, "Sauer suddenly and inexplicably reversed course

even though nothing new or unexpected had happened." <u>Id.</u> at 5. JWC also alleges "[i]t was clear to all parties that a dispute was brewing" and that Sauer should have been aware JWC would file an action in this Court as it "was the only choice JWC had available." <u>Id.</u> at 7; <u>see also</u> <u>id.</u> (stating that "[o]nly after JWC proceeded to defend itself in one forum [(Louisiana)] and advance its own claims in another did Sauer seek to enforce an arbitration process which it could have instituted from the beginning"). Plaintiffs further contend that "[i]f the driving policy consideration behind the [FAA] is preventing parties from wasting time and money, Sauer's actions already have undermined that policy consideration." <u>Id.</u> at 6.

In their Reply, Defendants contend that "the right to arbitrate was not triggered until [Plaintiffs] filed suit against Sauer and F[IC.] Reply at 2.[9] Defendants attempt to rebut Plaintiffs' arguments by claiming the Louisiana Lawsuit did not amount to substantial litigation (and thus not inconsistent with the intent to arbitrate) on the ground that "there ha[d] been no answer filed and no discovery taken" and that "Plaintiffs filed a motion to dismiss the Louisiana [Laws]uit, which was not opposed . . . ." <u>Id.</u> Finally, Defendants assert that JWC does not satisfy its heavy burden of proving prejudice, arguing it "was only

---

[9]    In its Motion, Sauer claims that "the Louisiana [Laws]uit involve[d] different claims than the . . . causes of action asserted" in this Court. Motion at 11; <u>see id.</u> at 11-12.

speculative" that JWC would bring claims in this Court and "Sauer immediately invoked its right to arbitrate" as soon as the instant suit was filed. Id. at 4.

### III.   Legal Framework

When determining whether to compel arbitration, generally a court considers so-called "gateway" matters. Anders v. Hometown Mortg. Servs., 346 F.3d 1024, 1027 (11th Cir. 2003) (citing Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003)). In other words, the default rule is that a court should decide "such issues as are essential to defining the nature of the forum in which a dispute will be decided." Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003) (quoting Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085-86 (8th Cir. 2001)).

Specifically, the following factors should be considered: 1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived. Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999) (naming factors); see Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1370-79 (11th Cir. 2005) (discussing validity of agreement and whether employment claims can be arbitrable); S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (discussing waiver of the right to arbitrate). There is a strong federal policy favoring arbitration; thus, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration . . . ." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

As Plaintiffs do not raise any challenges regarding the first and second factors, the undersigned focuses the analysis on the third factor: whether the right to arbitrate has been waived.

To determine whether the right to arbitrate has been waived, courts apply a two part test: i) whether, "'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right'"; and ii) "whether, by doing so, that party 'has in some way prejudiced the other party.'" <u>Ivax Corp. v. B. Braun of Am., Inc.</u>, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (quoting <u>S & H Contractors, Inc.</u>, 906 F.2d at 1514); <u>see also</u> <u>Garcia v. Wachovia Corp.</u>, 699 F.3d 1273, 1277 (11th Cir. 2012) (quotations and citations omitted). Due to the strong federal policy favoring arbitration, "any party arguing waiver of arbitration bears a heavy burden of proof." <u>Stone v. E.F. Hutton & Co.</u>, 898 F.2d 1542, 1543 (11th Cir. 1990) (quotation and citation omitted).

A party that "substantially invokes the litigation machinery prior to demanding arbitration" may waive the right to arbitrate. <u>Garcia</u>, 699 F.3d at 1277 (quoting <u>S & H Contractors</u>, 906 F.2d at 1514). The key is whether there has been substantial participation in litigation "to a point inconsistent with an intent to arbitrate[.]" <u>Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)</u>, 62 F.3d 1356, 1366 (11th Cir. 1995). As examples, courts

have held that long delays in seeking to compel arbitration and participation in discovery can amount to acting inconsistently with the right to arbitrate. See, e.g., Garcia, 699 F.3d at 1277 (party failed to move to compel arbitration twice even though the court invited it to do so, and party participated substantially in litigation by conducting discovery for more than one year); S & H Contractors, 906 F.2d at 1514 (holding a party acted inconsistently with the right to arbitrate when it waited eight months to move to compel arbitration, by which time the parties had litigated two motions and the moving party had taken five depositions); Int'l Hair & Beauty Sys., LLC v. Simply Organic Inc., No. 8:11-cv-1883-JSM-AEP, 2012 WL 3670260, at *3 (M.D. Fla. Aug. 24, 2012) (unpublished) (finding waiver when a defendant "filed an answer and affirmative defenses, participated in hearings, submitted an affidavit in opposition to and testified against [the opposing party's] motion for a Temporary Restraining Order, objected to document requests, answered interrogatories, and had his deposition taken" before requesting to arbitrate eight months into the litigation).

"The failure to assert the right of arbitration alone," without a finding of substantial participation in litigation, "does not establish a waiver of the right of arbitration." Suntrust Bank v. Gill, No. 8:10-cv-2619-EAK-TBM, 2011 WL 2192825, at *2 (M.D. Fla. June 6, 2011) (unpublished). When a defendant merely appears in an action and files "some motions, without response and

adjudication," it is not typically considered substantial participation in litigation. Id.

"Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." Morewitz, 62 F.3d at 1366 (citation omitted); Garcia, 699 F.3d at 1277 (quotation and citation omitted) (in determining whether prejudice has occurred, the court "may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process"). Additionally, "[t]he use of pre-trial discovery procedures by a party seeking arbitration may sufficiently prejudice the legal position of an opposing party so as to constitute a waiver of the party's right to arbitration." Stone, 898 F.2d at 1543 (citation omitted).

## IV.   Discussion

As mentioned previously, JWC argues that Sauer's conduct (in filing the Louisiana Lawsuit) satisfies both prongs for waiver, while Sauer argues that neither prong is met.

## A.   Whether Sauer Acted Inconsistently with its Arbitration Right

Generally, a delay in seeking arbitration weighs in favor of finding waiver, see Morewitz, 62 F.3d at 1366, but courts have found that the length of time in itself does not establish waiver, see Grigsby & Assocs., Inc. v. M. Secs.

13

Inv., 635 F. App'x. 728, 733 (11th Cir. 2015).[10] Instead, the delay must be "coupled with other substantial conduct inconsistent with an intent to arbitrate." Id. (emphasis added) (citations omitted).

As noted, "[t]he crux of JWC's argument is that Sauer has waived its contractual right to compel arbitration by virtue of filing" the Louisiana Lawsuit. Response at 1. In support of this argument, JWC tries to distinguish the holding in Grigsby from the current set of facts. See id. at 4-5.[11] In Grigsby, the plaintiffs argued that the defendants' filing of four lawsuits prior to initiating arbitration was inconsistent with the intent to arbitrate. 635 F. App'x at 732-33.[12] However, the United States Court of Appeals for the Eleventh Circuit held that the filing of the four lawsuits, even though it "invoked the litigation machinery," was "insubstantial." Id. at 732. The fourth lawsuit was eventually dismissed for lack of prosecution after the filing party failed to respond to a motion to dismiss. See id. The Eleventh Circuit stated that "[f]iling

---

[10]     While Grigsby is an unpublished opinion and therefore not binding authority, it may be considered as persuasive authority. See 11th Cir. R. 36-2.

[11]     JWC also cites to Fed. Nat'l Mortg. Ass'n v. Prowant, 209 F. Supp. 3d 1295, 1307 (N.D. Ga. 2016). JWC states that the Prowant court noted that "a different standard is applied when the party seeking to compel arbitration [is] the same party that already initiated the litigation." Response at 4 (citing Prowant, 209 F. Supp. 3d at 1307). However, JWC then notes that the Prowant court stated that "[u]nder those circumstances such conduct 'is sometimes excused' if the prior lawsuit was 'insubstantial.'" Id. (citations omitted).

[12]     The defendants in Grigsby also filed a malpractice suit against their former counsel and waited ten years after the transaction at issue before demanding arbitration. See Grigsby, 635 F. App'x at 732-33.

14

lawsuits prior to initiating arbitration certainly can support a finding of waiver, particularly when the opposing party expends significant time and resources responding to the lawsuit." Id. (citation omitted). Ultimately, the Eleventh Circuit held that the defendants had not waived their right to arbitrate because these "placeholder" lawsuits, three of which were never served and one that was "dismissed with little effort required" by the plaintiff, were not "sufficiently inconsistent with such an intent to compel a finding of waiver." Id.

Here, JWC argues, in contrast to Grigsby, that "Sauer ha[d] filed suit, served process, received JWC's [Peremptory Exception] and ha[d] coordinated a hearing date for early October," (which never actually occurred). Response at 5. JWC also contends that "[Sauer] ha[s] already engaged the machinery of litigation[.]" Id.

Sauer initially filed the Louisiana Lawsuit against JWC in March 2020. See Petition at 3-7. JWC responded to that lawsuit by filing the Peremptory Exception (seeking a dismissal), see generally Peremptory Exception, and Sauer responded without opposition, see generally Response to Peremptory Exception. The Louisiana court then entered Judgment dismissing the case without prejudice. See Judgment at 2. Based on these facts, the undersigned finds this case similar to Grigsby and that the mere filing of the Louisiana Lawsuit and the limited litigation, without more, was "insubstantial." See Grigsby, 635 F. App'x at 733 (stating that "[a]lthough [the defendant's] conduct

was somewhat inconsistent [with its intent to arbitrate], it did not involve collusion . . . extensive litigation . . . or an express repudiation of arbitration" (citations omitted)).[13]

Further, Plaintiffs filed their Complaint in this Court the same day JWC filed its Peremptory Exception in Louisiana. See generally Compl.; Peremptory Exception. Sauer filed the Motion (seeking to compel arbitration) approximately three weeks after and has not filed an Answer. Based on the filings and the docket, it does not appear that the parties have engaged in any discovery. They have filed a joint Case Management Report, which does not amount to substantial participation in litigation as it clearly states that Sauer is seeking to compel arbitration and the dates listed are tentative pending a ruling on this Motion. See Case Management Report (Doc. No. 16; "Report"), filed November 11, 2020, at 1 n.1; see also Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc., No. 6:14-cv-1551-PGB-GJK, 2015 WL 6869734, at *3 (M.D. Fla. Nov. 9, 2015) (unpublished) (finding that the filing of a joint case management report did not amount to substantial participation in litigation even though the

---

[13]     Although the parties did participate in an unsuccessful mediation, this was not inconsistent with an intent to arbitrate as JWC filed its Peremptory Exception afterwards seeking a dismissal of the Louisiana Lawsuit and Sauer moved to compel arbitration shortly after being served with Plaintiffs' Complaint in this Court, which was filed the same day as JWC's Peremptory Exception. See Manard v. Knology, Inc., No. 4:10-cv-15 (CDL), 2010 WL 2528320, at *4 (M.D. Ga. June 18, 2010) (unpublished) (finding that filing a motion to dismiss, negotiating a scheduling order, and participating in mediation were not inconsistent with the defendant's right to arbitrate, and noting that "only when the meditation yielded unsuccessful results did [the d]efendant file its motion to compel arbitration").

parties marked "no" to the question of whether the case should be submitted to arbitration, and the defendant filed a motion to dismiss), aff'd, 845 F.3d 1351 (11th Cir. 2017). The Report also notes that the parties have agreed to stay discovery and will "work together to exchange Initial Disclosures on or before a mutually agreeable date should arbitration not be compelled." Report at 1 n.2. The only meaningful activity in this litigation is the filing of the Complaint and the motions related to the disputed matter of arbitration. Based on this, the Court stayed the case pending the outcome of the instant Motion.

Under the "totality of the circumstances," it does not appear that the Louisiana Lawsuit or the current case before this Court amount to "substantial participation in litigation" to a point that was inconsistent with an intent to arbitrate. See Ivax Corp., 286 F.3d at 1315-16 (quoting S & H Contractors, Inc., 906 F.2d at 1514); see also Palmer v. Navient Sols., LLC, No. 3:17-cv-657-BJD-JBT, 2018 WL 1863829, at *2 (M.D. Fla. Jan. 31, 2018) (unpublished report and recommendation) (finding defendant did not waive its right to arbitration by filing two motions for extension of time, filing an answer and affirmative defenses, engaging in a case management conference, and responding to plaintiff's discovery requests because defendant "ha[d] not propounded any discovery of its own, and it [did] not appear that [the d]efendant ha[d] taken any other substantive action in this case"), adopted, No. 3:17-cv-657-BJD-JBT, 2018 WL 11344770, (unpublished order).

**B.      Whether JWC has been Prejudiced by Sauer's Conduct**

Even if Sauer has acted inconsistently with the right to arbitrate, JWC's attempt to avoid arbitration is futile because it cannot show it has been prejudiced as a result. See Suntrust Bank, 2011 WL 2192825, at *2 (alternatively finding that even if there had been substantial participation in litigation, the opposing party had not been prejudiced, and the right to arbitration had not been waived).

JWC argues that it "has been prejudiced by Sauer's delays and gamesmanship." Response at 6 (emphasis omitted). JWC argues that Sauer had the ability to prevent both the Louisiana Lawsuit and this action by invoking its right to arbitrate Plaintiffs' claims but did not do so and instead "suddenly and inexplicably reversed course even though nothing new or unexpected had happened." Id. at 5; see id. at 2-3, 6-7.

In contrast, Sauer represents in its Reply that "the right to arbitrate was not triggered until [Plaintiffs] filed suit against Sauer and F[IC], as set forth in Sauer's [D]ispute [R]esolution" section. Reply at 2. Sauer further argues that "whether J[WC] would bring such claims was only speculative until this suit was filed" but that "[a]s soon as it was filed, . . . Sauer immediately invoked its right to arbitrate[.]" Id. at 4.

The Dispute Resolution section of the Subcontract Agreement allows JWC to bring any claim in state or federal court in Duval County and allows Sauer

the "sole option" to compel arbitration. See Subcontract Agreement at 13. JWC admits that "the entire [D]ispute [R]esolution [section] is one sided" and that JWC agreed to it. Response at 7. The Court recognizes that Sauer had the sole ability to invoke arbitration, and it is unclear why Sauer initiated the Louisiana Lawsuit rather than invoke arbitration.[14] Although Sauer asserts that the Louisiana Lawsuit involved "different claims" and this case "alleg[es] new causes of action against Defendants[,]" see supra n.9, it is also unclear why Sauer believes it could not have invoked arbitration before JWC filed the instant suit.[15] Whether Sauer's conduct amounted to "gamesmanship" as alleged by JWC or was a well-founded strategic move, looking at the totality of the circumstances (along with the finding that the Louisiana Lawsuit amounted to insubstantial litigation), the undersigned finds that JWC is not so prejudiced as to rise to the level to satisfy its heavy burden. See Stone, 898 F.2d at 1543.

In support of its prejudicial-prong argument, JWC again cites to Prowant and states that the Court "should have no trouble concluding that the delay and

---

[14]    JWC argues that "Sauer could have waited for JWC to file suit and then Sauer could have advanced its own claims as counterclaim[s] in the [Florida] action, therefore allowing all claims to be resolved in one forum" or "[a]lternatively, if Sauer did not want to wait, it could have instituted an arbitration proceeding from the beginning[, but Sauer] did neither." Response at 3.

[15]    In its Response to Peremptory Exception, Sauer stated it "has formally invoked its right under the parties' [S]ubcontract [Agreement] to arbitrate all disputes between the parties" and it "now intends to arbitrate the claims asserted in th[e Louisiana Lawsuit] and the claims asserted in the Florida [Laws]uit." Response to Peremptory Exception at 1 (emphasis added); see also Reply at 3.

costs incurred by [JWC] are prejudicial for purposes of the waiver analysis." Id. at 6 (citing Prowant, 209 F. Supp. 2d at 1308 (citation omitted)). However, the Prowant holding is distinguishable as the parties there were already proceeding in arbitration when the plaintiff filed a complaint in federal court, asking the court to decide "the very clause construction issue" that the arbitrator was also deciding. See Prowant, 209 F. Supp. 3d at 1299. The court stated that "no reasonable jury could conclude that [the plaintiff]'s invocation of the litigation machinery was insubstantial" because the plaintiff "did not merely wait to compel arbitration of a case in which it was named a defendant." Id. at 1307. The court further found that the plaintiff "affirmatively filed a federal court action when the dispute had already been proceeding before an arbitrator, without objection, for some six months and was about to go to final hearing on class availability" and that the plaintiff "initially sought a [c]ourt injunction preventing the arbitrator from deciding an issue that [the plaintiff] had extensively briefed in arbitration and never once objected to the arbitrator deciding (prior to filing the lawsuit, of course)." Id. The actions of the plaintiff in Prowant resulted in "almost two years of litigation involving two summary judgment motions, multiple motions to file under seal, and protracted mediation before a Magistrate Judge[.]" Id. at 1308.

The Court does not find Prowant persuasive. In contrast here, JWC only filed one motion in the Louisiana Lawsuit, which asked the court to dismiss the

case, see generally Peremptory Exception, and the lawsuit was ultimately dismissed without a hearing or oral argument on the Peremptory Exception, see generally Judgment.

As mentioned previously, prejudice "has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." Morewitz, 62 F.3d at 1366 (citation omitted); Garcia, 699 F.3d at 1277 (quotation and citation omitted). Although JWC has incurred costs stemming from the Louisiana Lawsuit, it only filed one motion (the Peremptory Exception) and the hearing on said motion was never held due to the action being dismissed without prejudice. See Grigsby, 635 F. App'x at 734 (stating that "incurring minimal fees in responding to lawsuits is insufficient to establish prejudice supporting a finding of waiver" (citations omitted)).

Additionally, JWC has provided no evidence of the costs incurred in the action before this Court (or the Louisiana Lawsuit). See id. at 734 n.10 (finding no prejudice where a party failed to offer any evidence concerning the time and resources expended prior to request for arbitration). To date, JWC has filed its Complaint (on the same day it filed its Peremptory Exception in Louisiana asking for dismissal), paid the filing fee, and executed service of process. These expenses are not prejudicial because JWC would have incurred these expenses, that is to bring its Miller Act and breach of contract claims, even if Sauer had

not filed the Louisiana Lawsuit. Further, the expenses incurred in filing the Response to the Motion concern the very issue of arbitration and are not prejudicial. Finally, JWC only filed one motion in the Louisiana Lawsuit and coordinated one hearing that never took place. Thus, JWC has failed to meet its heavy burden of showing prejudice.

### V.   Conclusion

Based on the foregoing, it is

**RECOMMENDED**:

1.      That Defendants' Motion to Compel Arbitration and to Stay Claims Pending Arbitration (Doc. No. 8) be **GRANTED**.

2.      That the parties be **DIRECTED** to submit Plaintiffs' claims to arbitration in accordance with the Dispute Resolution section contained in the Subcontract Agreement.

3.      That this case remain **STAYED** pending the completion of the arbitration proceedings, and that the Clerk of Court be **DIRECTED** to terminate any pending motions and keep the case administratively closed until further Order.

4.      That the parties be **DIRECTED** to file a joint status report upon the conclusion of the arbitration proceedings. That the parties be further **DIRECTED** that if the arbitration proceedings are not completed within 120 days of a final order being entered on the instant Motion, the parties shall file

a joint status report at that time and every 120 days thereafter until the arbitration proceedings are completed.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on September 10, 2021.

JAMES R. KLINDT
United States Magistrate Judge

keh
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record